(No. 21815.—■■■■■■■■■■■■■■■■■■■

LORETTE J. DARLINGTON *et al.* Plaintiffs in Error, *vs.*
N. I. PERRY, Defendant in Error.

*Opinion filed October 21, 1933—Rehearing denied Dec. 8, 1933.*

FREDERICK C. JONAS, (J. J. COOKE, of counsel,) for plaintiffs in error.

FRANCIS L. BRINKMAN, for defendant in error.

Mr. Justice Stone delivered the opinion of the court:

This court granted in this cause a writ of *certiorari* to review the judgment of the Appellate Court for the First District reversing a decree of the circuit court of Cook county, with directions to enter another decree in accordance with the views expressed in the opinion of the Appellate Court.

The cause arises on a bill seeking an accounting of partnership matters and a dissolution of the partnership. The original bill was filed on May 20, 1929, by William H. Darlington and was for a partnership accounting. Two weeks thereafter he was adjudged incompetent in the probate court of Cook county and plaintiffs in error were appointed his conservators. No answer was filed to the original bill, and on June 10, 1929, plaintiffs in error, as such conservators, filed their sworn bill, characterized by them as "an amended bill," setting out their appointment as conservators, and by allegations concerning the partnership, which were in material respects the same as those of the original bill, they sought an injunction against defendant in error restraining him from disposing of the property of the partnership, prayed dissolution of the partnership and an accounting, and for a receiver.

The material allegations of the so-called amended bill are, that in January, 1920, Darlington, who was then the sole owner of a business known as "The Great West Serum Company," entered into an oral agreement with defendant in error to establish a partnership in the business under the same firm name and style theretofore used; that the partners would partake equally of all the assets of the business as it then stood, each partner to assume one-half of the debts and bad or uncollectible bills and each to receive fifty per cent of the net profits of the business. The bill further alleges that Darlington became seriously ill in 1925 and since that time has been unable to take active part in

the conduct of the business but relied upon defendant in error to conduct the business and make report thereof, and that Darlington placed great confidence in defendant in error and believed what he said concerning the business. The bill further charges that notwithstanding this, defendant in error appropriated to his use more than the sum to which he was entitled and failed to give correct statements of the condition of the business but gave untrue statements, and failed to account to Darlington as he in good faith was required to do; that while the business was, during the time Darlington was in actual control and management of it, in good condition and making large profits, the value of the capital account of the business at the time the bill was filed did not exceed $12,000. Defendant in error answered the bill, admitting the formation of the partnership on January 1, 1920, substantially as alleged in the amended bill, but denied the charge of mismanagement or that he had received more than his share of the proceeds. The court, on further petition of plaintiffs in error, appointed a receiver, and the cause was referred to a master for an accounting. The chancellor, on objection to the master's report, made certain adjustments in the account and entered a decree finding that the total credit balance of plaintiffs in error was $8336.29, one-half (or $4168.14) of which was due from defendant in error, and that the costs, including the receiver's fees of $1500 and its solicitor's fees of $600, should be charged against the estate and shared by both partners. The balance in the hands of the receiver of something over $2100 was directed to be paid to the plaintiffs in error.

On the hearing before the master it appeared from the evidence that the books of the partnership showed that the capital account, which at the time of the formation of the partnership amounted to $22,375.82, had been carried at all times in the name of Darlington. The evidence shows that Perry, defendant in error, at no time contributed any-

thing to the capital account, and that he kept the books, or directed the keeping of them, and managed the business.

On review of the decree the Appellate Court found that owing to the allegation in the bill that each partner was to partake equally of "all the assets of the business as it then stood," which allegation was admitted by the answer, evidence as to what constituted the actual partnership contract was incompetent, and, the allegation having been so made in the bill and admitted by the answer, Perry was entitled to one-half of the assets of the partnership at the time it was formed. The Appellate Court held, as did the circuit court, that certain old accounts which had accrued prior to the formation of the partnership belonged to Darlington; that the loss on sales accounts should be borne equally, but that the receiver's and its attorney's fees were unlawfully charged against the partnership for the reason that the evidence showed no just cause for the appointment of a receiver. The decree of the circuit court was reversed and the cause remanded, with directions to enter a decree in accordance with the views of the Appellate Court.

The principal question involved in the case is whether plaintiffs in error are bound by the statement in the amended bill concerning the terms of the partnership agreement or whether it was competent to hear evidence as to the terms of that agreement. The rule has been frequently announced in this State in cases concerning minors, that a guardian *ad litem* appointed by the court to protect the ward's interest has no power to make admissions, nor to authorize any other person to make them for him, which are adverse to the interests of the ward. (*Knights Templars Indemnity Co* v. *Crayton*, 209 Ill. 550; *Cochran* v. *McDowell*, 15 id. 10.) This is likewise the rule in other jurisdictions. *Pond* v. *Hopkins*, 154 Mass. 38, 27 N. E. 517; *Ratcliff* v. *Davis*, 64 Iowa, 467.

In *Knights Templars Indemnity Co.* v. *Crayton, supra,* it was sought to have certain testimony of a minor plain-

tiff contained in a deposition treated as an admission on the part of such minor, but it was held that infants are not bound by admissions; that they cannot make them nor authorize persons to make them for them, and that the duties of the guardian are to conserve and protect the interests of the ward, and he therefore cannot make admissions that are adverse to the ward's interests. The principle applied in that case is not lacking in analogy here. Darlington had been adjudicated incompetent and could make no admissions binding upon himself. The averment in the bill of his conservators that under the partnership contract there was to be an equal division of the capital assets cannot, therefore, be taken as an admission against Darlington's interest where the evidence shows that such was not the contract.

The original bill, which was substantially the same in this particular, was introduced in evidence, and it is earnestly argued that it showed that at the time the bill was filed, which was before Darlington was declared incompetent, the same allegation concerning the partnership arrangement was made. Leaving out of account the actual incompetency of Darlington, as a matter of fact, at the time of the filing of the original bill, which was but about two weeks prior to the adjudication of his incompetency, he, as the evidence shows, having been mentally and physically ill for some years prior to the filing of the bill, we are of the opinion that such allegations in the bill here considered do not preclude the hearing of evidence in a case of this character where the complainants are suing as conservators of an incompetent person, and we see no reason why the rule concerning such admissions should not apply in a case of this character as in the case of incompetence due to minority.

Counsel for defendant in error has cited numerous cases laying down the rule that where allegations are made in

a bill which are admitted in the answer, proof thereof is unnecessary. Such cases, however, have no application where the incompetency of the party to be thereby affected exists. Darlington being incompetent, Perry was likewise incompetent to testify as to the terms of the original contract of partnership. The books of the partnership, however, were competent, and it is not disputed that they show that the assets of the business were at all times carried in the name of Darlington. We are of the opinion that it was in the interest of justice that all competent evidence be heard concerning the terms of that partnership agreement, and the Appellate Court was in error in holding such evidence incompetent. Where one party to a proceeding is shown to be incompetent it is the court's duty to see that his rights are properly protected, and to that end will hear all competent evidence notwithstanding admissions against interest made in his bill. (*Millage* v. *Noble,* 334 Ill. 315.) Books of account of a partnership are presumed to contain a true history of the business and a true record of the transactions between the partners, and, in the absence of proof to the contrary, reliance is properly placed on such books to determine the terms of the partnership contract. *Stuart* v. *McKichan,* 74 Ill. 122.

Counsel for defendant in error seems to argue that such books are competent and binding as to all persons except the partners but that as to them they are not to be so considered. The rule is that books of a partnership, where all partners have or are entitled to access thereto, are equally binding upon all partners, and as between them the books are presumed to be true and correct and to form a proper basis for stating partnership accounts until the contrary is shown. (*Donaldson* v. *Donaldson,* 237 Ill. 318.) It is an interpretation placed upon the contract by the parties themselves, and thus may always be looked to for assistance in ascertaining the meaning of the contract. (*Walker* v. *Illinois Central Railroad Co.* 215 Ill. 610; *Work*

v. *Welsh,* 160 id. 468; *People* v. *Murphy,* 119 id. 159.) In this case not only did Perry have full access to the books, but he kept them or directed their keeping. It seems to us, therefore, that evidence of what the books of this partnership showed is most valuable extrinsic evidence of the partnership contract. It appears in the record that both complainants and defendant procured audits of the books. Complainants' audit showed the books as they exist and also a statement as to what they say should be considered a correct statement of the account. But, as we have said, no question is raised here as to the correctness of the books. Theoretical audits of the books of a partnership by opposing parties, based on the claims of such parties, are not competent as evidence as they are but self-serving declarations, but the audit of the actual condition of the books was properly introduced in evidence. That audit, as we have said, showed that the capital assets of the partnership were at all times carried on the books as the property of Darlington.

The Appellate Court held that it was error to include the fees of the receiver and its solicitor in the costs to be taxed against the partnership, and that because of a want of showing of reasonable ground for the appointment of such receiver the costs should have been borne by plaintiffs in error. This was error. While the bill prayed the appointment of a receiver, such action was not taken on the bill but on a later petition therefor filed by plaintiffs in error as conservators, alleging that numerous hearings of evidence had been held by the master in chancery which tended to show that defendant in error had overdrawn his account approximately $11,000, and that the business was losing and had suffered a serious loss since the first of January, 1929. It was on this petition that the receiver was appointed. In view of the fact that the circuit court found, in the settlement of the partnership account, that defendant in error owed plaintiffs in error something over

$4000, it can scarcely be said that the allegation that he had overdrawn his account with the partnership constituted no foundation for the appointment of a receiver. This allegation, sustained as it was, afforded sufficient basis for the appointment of a receiver, and the circuit court was right in decreeing the costs thereof against the partnership assets, to be borne by both parties equally.

Both the circuit and Appellate Courts found that certain accounts which had been written off as uncollectible prior to the formation of the partnership, but some of which were afterwards collected, should be credited to Darlington. Since those accounts had to do with the business prior to the formation of the partnership, this disposition of the matter was correct.

It is also argued here on assignment of cross-error, that certain accounts which were sold by the receiver under order of the court, showing a loss of something over $4000, should not have been charged against the partnership account since these accounts were sold to Darlington at public auction. No question is raised as to the legality of the sale nor the sufficiency of the amount recovered. The sale being public, defendant in error had a right to bid had he thought the accounts were bringing less than they were worth. The argument seems to be, however, that the loss on these accounts should be charged against Darlington alone. The accounts, so far as the record shows, were those accruing after the formation of the partnership, and losses thereon were, under the construction of the partnership contract by both parties, properly charged to the partnership account. This was not error.

We are of the opinion that the decree of the circuit court was correct. The judgment of the Appellate Court is therefore reversed and the decree of the circuit court is affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*