GEORGE C. WALKER

*v.*

THE ILLINOIS CENTRAL RAILROAD COMPANY.

*Opinion filed June 23, 1905.*

1. RAILROADS—*easement of right of way is absolute for the purposes for which it was acquired.* A grant of a right of way to a railroad company conveys to the company an interest which is absolute for the purposes for which it was conveyed so long as it is used for those purposes, even though the language of the deed falls short of conveying the fee to the land.

2. DEEDS—*when words relative to use of land are not restrictions.* Words following the granting clause of a deed which state the use to which the property granted is to be put are not restrictions upon its use unless it is specifically so stated in the deed; and this is true whether the deed conveys a fee or an absolute easement carrying exclusive possession during the continuance of the use.

3. SAME—*construction of deed should be based upon the whole instrument.* In construing a deed or other written instrument it is not permissible to select a few words therefrom and base a construction of the instrument on those words alone.

4. SAME—*deed construed as not limiting use of right of way to two tracks.* A deed conveying the use of a strip of land two hundred feet wide "for the purpose of constructing, maintaining and operating thereon a single or double track railroad, with all necessary appurtenances, and for all uses and purposes connected with the construction, repair, maintenance and complete operation of said railroad," to have and to hold "for all lawful uses and purposes for which the right of way could have been obtained in pursuance of the charter of the company," does not limit the use to the construction thereon of two tracks only.

5. CONTRACTS—*construction placed upon a contract by parties will be looked to by courts.* In construing a contract it is allowable

to look to the interpretation the contracting parties have put upon it, either contemporaneously or in its performance; and a reasonable construction placed by the parties upon an indefinite or uncertain provision will be adopted by the courts.

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This was an action on the case commenced by the appellant, against the appellee, in the superior court of Cook county, to recover damages alleged to have been sustained by the appellant in consequence of the increased use by the appellee of its 200-foot right of way between Twenty-second and Twenty-fifth streets, in the city of Chicago, by erecting thereon more than a single or double track railroad, in violation of the terms of the grant of said right of way to it by Stephen A. Douglas, it being averred that the appellant was the owner of the fee of said right of way by *mesne* conveyance from said Stephen A. Douglas. The deed from Douglas to the appellee was made a part of the declaration, and is as follows:

"This indenture, made and entered into this 25th day of February, A. D. 1853, between Stephen A. Douglas, of the county of Cook and State of Illinois, of the first part, and the Illinois Central Railroad Company of the second part, witnesseth: That whereas the said Illinois Central Railroad Company contemplated the construction of certain lines of railroad, with branches thereto, as authorized by the act incorporating said company; and whereas, the said railroad has been located by the said company over and upon certain tracts of land owned by the said Stephen A. Douglas; and whereas, the said Stephen A. Douglas of the first part and the said Illinois Central Railroad Company of the second part did, on the 27th day of July, A. D. 1852, enter into an agreement respecting the said right of way and the consideration and damages to be paid therefor, which said agreement was in the words and figures following, to-wit:

" 'This article of agreement made between Stephen A. Douglas of the first part and the Illinois Central Railroad Company of the second part, witnesseth: That the said party of the first part, for and in consideration of the payment of the sums of money hereinafter stipulated to be paid, agrees to compromise and liquidate the damages by him sustained in consequence of the location of the Chicago branch of the said road across and over his lands, to-wit, the north-east fractional quarter of section 27, deducting eleven acres off the south end as per deed to other parties, and the south half of the north-east fractional quarter of section 34, in township 39, north, and range 14, east, on the following terms: The said company is to pay the said Douglas at the rate of $1500 per acre for the land and water covered by the location of said road 200 feet wide over and across said first named tract, and at the rate of $1000 per acre for the land and water covered by the location of said road over and across the said second named tract, it being distinctly stipulated and understood between the said parties that the said Stephen A. Douglas expressly reserves and said company expressly concede to the party of the first part all title, right and ownership to the land and water between the eastern line of said road and the center of Lake Michigan, and bounded by due east lines from the north and south ends of each of said tracts. And in consideration of the stipulations aforesaid, the said Douglas does hereby agree to convey and concede to the said company, for the use of the said road, all the easements, rights, privileges and immunities which the said company would have had if the right of way had been condemned and confirmed by legal proceedings under the laws of the State of Illinois and in pursuance of the charters of said company.

" 'In witness whereof these presents are signed by the respective parties hereto this 27th day of July, 1852.    ·

                         THE ILLINOIS CENTRAL RAILROAD Co.,

In presence of          By Robert Schuyler, *Prest.*

    A. J. T. VANDERVENTER,          S. A. DOUGLAS.

    R. S. VANVOOEST.'

"Therefore, in affirmance of the said agreement, the said Stephen A. Douglas of the first part, for and in consideration of the sum of $21,310 to him paid by the said party of the second part, the receipt of which is hereby acknowledged, has granted, bargained, sold, aliened, remised, released, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, remise, release, convey and confirm, unto the said Illinois Central Railroad Company and to their successors and assigns, for the purpose of constructing, maintain-

ing and operating thereon a single or double track railroad, with all its necessary appurtenances, and for all uses and purposes connected with the construction, repair, maintenance and complete operation of said railroad, the right of way for the same over and through the following tracts or parcels of land situate, lying and being in the county of Cook and State of Illinois, bounded and described as follows: The north-east fractional quarter of section 27, deducting eleven off of the south end thereof as per deeds to other parties; also so much of the north-east fractional quarter of section 34, in township 39, north of range 14, east of the third principal meridian, as is owned by said Douglas, bounded on the north by the land of Soren and Henry Groves, on the east by Lake Michigan, on the south by the land of S. Ellis, and on the west by the western boundary of said quarter section; said right of way over and through the lands and premises above described to include and comprise the width of 200 feet, to be taken 50 feet on the west side and 150 feet on the east side of said railroad, measuring from the center of the track, there being in the first named tract hereby conveyed nine acres and eighty-nine hundredths and in the other tract six acres and forty-nine hundredths, as said road has been surveyed, located and established by said company, particular reference being had to a map or plat of said lands and the said railroad track over and through the same, filed and recorded in the office of the recorder of the said county of Cook, together with all the tenements, hereditaments, profits, rights, privileges and appurtenances thereunto pertaining.

"To have and to hold the same unto the said Illinois Central Railroad Company, their successors and assigns forever, for all lawful uses and purposes for which the right of way could have been obtained in pursuance of the charter of said company. And it is distinctly stipulated and understood by and between the said parties that the said Stephen A. Douglas expressly reserves and the said Illinois Central Railroad Company expressly concedes to the said party of the first

part all title, right and ownership to the land and water between the eastern line of said railroad and the center of Lake Michigan and bounded by due east lines drawn from the north and south ends of each of said tracts of land: *Provided, however,* that if the said Illinois Central Railroad Company, or their successors or assigns, shall at any time hereafter cease permanently to occupy and use said railroad, or the said track shall be abandoned or the route thereof changed so as not to be continued over and through the premises hereby conveyed, then and in that case the said lands and premises hereby granted shall revert to the said Stephen A. Douglas or whoever may be lawfully entitled to the same. And it is understood that said Illinois Central Railroad Company shall erect and maintain such crossings as may be necessary to the accommodation of persons whose lands are divided by the said track, and shall also erect and maintain such lawful fences as will divide the lands occupied by said company from the adjoining lands on each side, and as far as practicable prevent intrusion upon or passage across the lands and railroad occupied by said company.

"In witness whereof the said Stephen A. Douglas of the first part and the said Illinois Central Railroad Company of the second part have executed this indenture in duplicate, and have hereunto affixed their signatures and seals this 25th day of February, A. D. 1853."

The appellant dismissed as to the second count of his declaration and amended the first count, whereupon the court sustained a general demurrer thereto, and appellant having elected to stand by his declaration as amended, the court dismissed the suit at his cost, and he has prosecuted an appeal to this court.

DUPEE, JUDAH, WILLARD & WOLF, for appellant.

SIDNEY F. ANDREWS, and J. G. DRENNAN, (J. M. DICKINSON, of counsel,) for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The briefs filed by the respective parties have been limited to the consideration of one question only, which is, is the appellee, under the terms of its grant from Stephen A. Douglas, as found in the deed which is made a part of the declaration, limited in its use of said 200-foot strip conveyed to it for right of way purposes, to the construction, maintenance and operation of a single or double track railroad thereon, with necessary appurtenances, or may it devote the entire strip to track purposes if it deem such use necessary for the proper and successful operation of its railroad?

The first proposition discussed is whether the appellee, by virtue of said deed, took a fee in said 200-foot strip or merely an easement. There can be no question but that the appellee, under its charter and the statute in force in this State at the time it received said deed, had the power to acquire a fee, but we think, upon consideration of all the provisions found in said deed, that it did not acquire the fee to said strip, but only the right to use the same perpetually for railroad right of way purposes. The land contained in the strip was not conveyed to the appellee, but its use. The interest, however,' which the appellee acquired in said strip was absolute for the purposes for which it was acquired, so long as it was used for railroad right of way purposes. In *Hazen* v. *Boston and Maine Railroad Co.* 2 Gray, 574, it was said (p. 580): "The right acquired by the corporation, though technically an easement, yet requires for its enjoyment a use of the land permanent in its nature and practically exclusive." And in *Chicago and Mississippi Railroad Co.* v. *Patchin,* 16 Ill. 198, this court, on page 202, speaking through Mr. Justice SCATES, said: "I presume the right to the land upon which railroads are built is not strictly analogous to the easement of the public in highways, leaving the fee in the owner of the soil, but is an absolute ownership in fee for railroad purposes." And in *Illinois Central Railroad Co.* v. *Godfrey,* 71 Ill. 500, it was held that the right of way was the

exclusive property of a railroad company, upon which no unauthorized person had the right to be for any purpose. And in *Jackson* v. *R. & B. R. R. Co.* 25 Vt. 150, Mr. Justice Redfield said: "The railway company must, from the very nature of their operations, in order to the security of their passengers, workmen and the enjoyment of the road, have the right at all times to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy by the former owners in any mode and for any purpose."

In *Illinois Central Railroad Co.* v. *Houghton,* 126 Ill. 233, on page 241, where the court was considering a deed very similar to the deed now under consideration, it was said: "While we are not disposed to hold that the deed from Walker to the plaintiff conveyed to the plaintiff an estate in fee in the right of way, it is clear that it conveyed an estate which, so far as the right of possession for railroad purposes is concerned, had most of the qualities of the fee. The right of possession thereby conveyed was exclusive, and was wholly inconsistent with the subsequent possession of the land, or any part of it, by the grantor or his assigns for purposes of grazing or agriculture, or as a part of the farm to which it originally belonged." To the same effect is *Illinois Central Railroad Co.* v. *O'Connor,* 154 Ill. 550.

It is clear from these authorities that appellee acquired the right to use said 200-foot strip absolutely for railroad right of way purposes, and that the appellant, as grantee of Douglas or otherwise, had or could acquire no interest therein which he could assert as against the appellee so long as the strip was used by the appellee for railroad right of way purposes, unless the right of the appellee to use the same is limited in some way by the deed from Douglas to it; and this brings us to the main contention of appellant, which is, that by the use of the words found in the deed, "for the purpose of constructing, maintaining and operating thereon a single or double track railroad," the appellee is so limited in the use of said strip that it cannot maintain thereon any

track or tracks in excess of "a single or double track rail-road" without being held to have placed an additional burden upon the fee, for which the appellant is entitled to recover damages in the nature of compensation.

We cannot accede to this view. The grant by Douglas to the appellee was of a strip 200 feet wide across his land for right of way purposes. This grant was absolute and without limitation, and the words, "for the purpose of con-structing, maintaining and operating thereon a single or double track railroad," cannot be held to restrict or limit that use. Had the grantee provided in the deed that no other track than a single or double track railroad should be ever constructed upon said 200-foot strip there would be force in the contention of the appellant, but such language is not found in the deed. The general rule is, that words following the granting clause of a deed which state the use to which the property granted is to be put are not restrictions or limi-tations upon its use unless it is specifically so stated to be in the deed. (*Board of Supervisors of Warren County* v. *Pat-terson,* 56 Ill. 133; *Downen* v. *Rayburn,* 214 id. 342.) The rule above announced is usually held to apply only where a fee has been conveyed. Still, in a case like this, where the use of the strip has been conveyed for railroad right of way purposes, and its exclusive possession is necessarily to be vested in the railroad company to fulfill the object of the grant so long as it shall be used for railroad right of way purposes, we are of the opinion no reason exists why such rule should not be applied to such conveyance.

The rule is also well settled that in construing written instruments all parts of the instrument should be considered in arriving at the intention of the parties thereto, and when the intention of the parties is ascertained it will be carried out. If this entire instrument, which amounts to something more than a deed, is considered, we think it is clear that the grantor intended to convey to the appellee the entire 200 feet for right of way purposes, and that he did not intend to

limit the appellee in its use thereof to a 16-foot strip, which would be the effect of the grant if the contention of appellant were sustained. The deed provides "the same,"—that is, the 200-foot strip,—shall be held by the appellee, "their successors and assigns forever, for all lawful uses and purposes for which the right of way could have been obtained in pursuance of the charter of said company," and the contention of the appellant that the only grant made to the appellee was the right to use said strip upon which to construct, operate and maintain "a single or double track railroad," with its appurtenances, is too narrow, and is inconsistent with all the provisions found in the deed from Douglas to appellee, with the exception of the words, "for the purpose of constructing, maintaining and operating thereon a single or double track railroad," when segregated from the context. In construing a deed or other instrument in writing it is not permissible to select a few words from the instrument and base a construction thereof upon a consideration of those words alone, but the entire instrument should be considered. An elementary canon of interpretation is, not that particular words may be isolatedly considered, but that the whole contract must be brought into view and interpreted with reference to the nature of the obligations between the parties and the intention which they have manifested in forming them. *O'Brien* v. *Miller,* 168 U. S. 287.

It appears from the declaration the agreement to convey was executed by Douglas on July 27, 1852, and that the deed was executed on February 25, 1853; that two tracks were placed upon the right of way subsequent to the contract and prior to the execution of the deed; that since the year 1879 the said railroad company has constructed and operated on said right of way eleven tracks more than the two above mentioned, without permission or consent of any kind from said Douglas or any one claiming under him, including the appellant; that one of said tracks was constructed in the year 1880, that two were constructed in the year 1883 and

others in the year 1888. It thus appears that the railroad company, by its course of action in constructing and operating these various tracks, showed that it construed the deed as giving it full authority to place as many tracks on said strip as it saw fit and to take exclusive possession of said 200-foot strip for right of way purposes. The appellant claims to have been the owner of the fee in this right of way since January, 1878. During all the time intervening between that time and the bringing of this suit on the 16th day of December, 1899, from aught that appears he stood by and made no protest to the construction placed on the deed by the railroad company. We think this is strong evidence that he construed the deed, himself, in the same manner as the railroad company had done. A contract is to be taken in the sense in which it was in fact understood by one of the parties to the knowledge of the other, when a new contract will not be made thereby. (*Street* v. *Chicago Wharfing and Storage Co.* 157 Ill. 605.) It is allowable always to look to the interpretation the contracting parties place on their agreement, either contemporaneously or in its performance, for assistance in ascertaining its true meaning. No extrinsic aid can be more valuable. (*Vermont Street M. E. Church* v. *Brose,* 104 Ill. 206.) A reasonable construction placed upon an indefinite or uncertain contract by the conduct of the parties will be adopted by the courts. *Work* v. *Welsh,* 160 Ill. 468.

From a full consideration of this record we are of the opinion that the trial court did not err in sustaining a demurrer to said declaration.

The judgment of the superior court will be affirmed.

*Judgment affirmed.*